******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COMMISSIONER OF PUBLIC HEALTH *v.*
ANTHONY COLANDREA
(AC 42475)

Elgo, Cradle and Alexander, Js.

*Syllabus*

The defendant, a dentist licensed by the Department of Public Health, appealed to this court from the judgment of the trial court denying in part his motion to vacate a prior contempt judgment stemming from his noncompliance with a subpoena duces tecum seeking the production of certain patient records, issued by the plaintiff, the Commissioner of Public Health, pursuant to statute (§ 19a-14 (a) (10)). The court previously had granted a petition for the enforcement of the subpoena and ordered the defendant to release the records to the department, and this court affirmed that order. The trial court subsequently granted the plaintiff's motion to find the defendant in contempt for failure to comply with the subpoena and ordered the defendant to pay a coercive fine each day until he produced the records to the department. Thereafter, the court affirmed its finding of contempt but vacated the fine, and it issued supplemental orders that the defendant permit the department to search his dental office for the patient records and awarded attorney's fees and costs to the plaintiff pursuant to the statute (§ 52-256b (a)) that permits the award of attorney's fees in contempt proceedings in the discretion of the court. *Held*:

1. The defendant's claim that the trial court erred in finding that his noncompliance with the subpoena was wilful was unavailing; the court found the defendant's testimony as to how the subpoenaed records came to be discarded or destroyed was not credible and concluded that the defendant had failed to prove that he was unable to comply with the subpoena's request for all applicable records, and, as the defendant bore the burden of proving that his noncompliance was not wilful, the plaintiff was not required to present evidence in opposition to the defendant's claim.

2. The trial court did not abuse its discretion in awarding the plaintiff attorney's fees pursuant to § 52-256b (a), as the court found the defendant's noncompliance was wilful and this court affirmed that finding.

3. This court declined to review the defendant's challenge to the constitutionality of the trial court's order permitting the plaintiff to search his office; the defendant claimed the search violated his fourth amendment rights pursuant to our rules of practice (§ 13-9), however, the plaintiff commenced the action seeking enforcement of the subpoena pursuant to § 19a-14 (a) (10), and the defendant did not challenge the constitutionality of that statute or the court's ability to issue the order under that statute.

Argued October 19, 2020—officially released February 23, 2021

*Procedural History*

Petition for an order to enforce a subpoena duces tecum, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Robaina, J.*; judgment granting the petition, from which the defendant appealed to this court, *DiPentima, C. J.*, and *Alvord and Lavery, Js.*, which affirmed the judgment of the trial court; thereafter, the court, *Sheridan, J.*, granted the plaintiff's motion for contempt; subsequently, the court, *Sheridan, J.*, granted in part the defendant's motion to vacate, and the defendant appealed to this court. *Affirmed.*

*Paul Spinella*, for the appellant (defendant).

*Susan Castonguay*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Clare Kindall*, solicitor general, for the appellee (plaintiff).

*Opinion*

CRADLE, J. The defendant, Anthony Colandrea, a dentist, appeals from the judgment of the trial court denying in part his motion to vacate a prior contempt judgment stemming from his noncompliance with a subpoena duces tecum issued by the plaintiff, the Commissioner of Public Health,[1] for certain records of his dental practice. On appeal, the defendant claims that the trial court (1) erred in finding that his noncompliance was wilful, (2) improperly awarded attorney's fees on the basis of wilful noncompliance, and (3) violated his constitutional right to be free from unreasonable searches when it issued an order permitting the plaintiff to search the office of his dental practice without a finding of probable cause or a valid search warrant. We affirm the judgment of the trial court.

The trial court set forth the following relevant factual and procedural history. "[The defendant] was licensed as a dentist and has been a self-employed dentist in Connecticut since 1980. In 2014, [the defendant] was the subject of an investigation commenced by the [plaintiff]. United Healthcare, a health insur[ance] provider, contracted with an auditing firm, Verisk Analytics, to conduct audits of various healthcare providers to investigate potential fraudulent billing activities.

"After reviewing patient billings submitted by the [defendant] to United Healthcare billing, Verisk Analytics attempted to obtain certain patient records from [the defendant]. [The defendant] refused to provide the requested records, leading Verisk Analytics to refer the matter to the Office of the Attorney General, which subsequently referred the matter to the [plaintiff].

"On August 27, 2014, the [Department of Public Health's] practitioner licensing and investigations section initiated an investigation of allegations of fraudulent billing activities by [the defendant]. On November 16, 2015, [the plaintiff] issued a subpoena duces tecum to [the defendant] for complete copies of all records for thirty-one patients identified by Verisk Analytics. When [the defendant] refused to comply with the subpoena, the present action seeking a contempt order was initiated."

"On December 10, 2015, the plaintiff . . . filed a petition for enforcement of [the] November 16, 2015 subpoena duces tecum served [on] [the defendant] seeking production of certain patient records in connection with an investigation of possible fraudulent billing practices. Th[e] [trial] court, *Robaina, J.*, conducted a hearing regarding the petition. On January 25, 2016, the court granted [the plaintiff's] petition and overruled the defendant's objection thereto, ordering the defendant to release thirty-one subpoenaed patient records to [the department]. The defendant appealed that decision and, on August 1, 2017, in a per curiam decision, [this court]

affirmed the [trial court's] granting of the petition for enforcement of [the] subpoena. *Commissioner of Public Health* v. *Colandrea*, 175 Conn. App. 254, 167 A.3d 471 (2017). The defendant petitioned the Supreme Court for certification. On November 8, 2017, [our] Supreme Court denied the defendant's petition. *Commissioner of Public Health* v. *Colandrea*, 327 Conn. 957, 172 A.3d 204 (2017).

"On November 20, 2017, [the plaintiff] moved the court to find the defendant in contempt for failing to comply with the subpoenaed patient records. The motion was calendared for a hearing on December 4, 2017. On November 28, 2017, the [defendant] moved for a continuance of the hearing, supposedly because [he] was 'in Florida, and unable to attend or testify on December [4].' . . . The continuance was denied. On December 4, 2017, the motion appeared on the short calendar and the parties appeared and were heard. [The defendant] was represented by counsel. At the hearing, neither [the defendant] or his counsel informed the court—or even suggested—that the records had been 'accidentally destroyed.' Quite to the contrary, counsel represented that 'there is an explanation for the non-compliance with the court order' but requested tha[t] any questioning of [the defendant] regarding that explanation be deferred until subsequent counsel could be present, because 'there is a fifth amendment problem.' [The defendant] did briefly take the stand but, on the advice of counsel, refused to answer any questions regarding the subpoenaed documents, invoking his fifth amendment privilege against self-incrimination.

"After the hearing, counsel for [the defendant] filed a motion for [a] protective order, based [on] a claim that [the] production of [the] documents in response to the subpoena would violate the fifth amendment prohibition against self-incrimination. The court denied the motion for [a] protective order and, on December 10, 2017, declared [the defendant] in contempt of court and ordered the defendant to pay a coercive fine of [$1000] per day to the Office of the Attorney General from the date of the order until the documents which are the subject of the plaintiff's petition for [the] enforcement of [the] subpoena were delivered to the [department]. . . .

"On December 15, 2017, new counsel for the defendant . . . appeared in the case and filed the present motion to vacate [the] order [of contempt]. In the motion, the defendant conceded that he had failed to produce the subpoenaed patient records to [the department] but nonetheless moved to vacate the coercive fine based on the impossibility of complying with the court order. The defendant asserted that he could not comply with the court's order because the documents are no longer in existence. The defendant explained that the subpoenaed documents were destroyed under

circumstances which the defendant alleged were outside his knowledge or control.

"The court heard evidence regarding the question of inability to comply on January 11, May 17 and June 25, 2018. Posthearing briefs were submitted by both parties." (Citation omitted; footnote omitted.)

On January 2, 2019, the court issued a memorandum of decision, in which it granted in part and denied in part the defendant's motion to vacate the prior contempt judgment. The court affirmed its prior finding of contempt but vacated the $1000 per day fine. The court issued supplemental orders that the defendant turn over any of the relevant records and that he "permit [the department] full and complete access to [his practice] for the purposes of inspecting and verifying the manner of storage, existence and location of stored patient records and other documents." The court also awarded attorney's fees and costs to the plaintiff pursuant to General Statutes § 52-256b (a), and it invited "[t]he parties [to] contact the court to schedule a hearing to present evidence and argument as to the amount of attorney's fees to be awarded." This appeal followed.[2]

I

The defendant first claims that the court erred in failing to vacate the judgment of contempt against him because his failure to comply was not wilful because "the records had been destroyed as a result of basement flooding and mold contamination and . . . the [plaintiff] failed to refute that evidence in any way." We are not persuaded.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . If the underlying court order was sufficiently clear and unambiguous, we . . . determine whether the trial court abused its discretion in issuing . . . a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding. . . . [T]his court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . [E]very reasonable presumption will be given in favor of the trial court's ruling, and [n]othing short of a conviction that the action of the trial court is one which discloses a clear abuse of discretion can warrant our interference. . . .

"To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . The inability of a party to obey an order of the court, without fault on his part, is a good defense to the charge of contempt. . . . The contemnor must establish that he cannot comply, or

was unable to do so." (Citations omitted; internal quotation marks omitted.) *Brody* v. *Brody*, 145 Conn. App. 654, 662, 77 A.3d 156 (2013).

Here, the defendant does not challenge the clarity of the court's order that he comply with the subpoena, nor does he contend that he complied with it. The defendant argues only that the court erred in finding that his noncompliance was wilful. In addressing the defendant's claim of wilfulness, the court noted the defendant's testimony that he had a practice of storing, among other things, patient records in the basement of his dental office, and that, on at least two occasions, July 28, 2016 and February 19, 2017, the basement was subject to minor flooding from leaky plumbing. The court stated that "testimony was offered that after one of these occasions, certain materials stored in the basement were discarded, probably including patient records responsive to the November 16, 2015 subpoena. The court notes that testimony, but does not find that fact to be proven by clear and convincing evidence." Specifically, the court found that "[the defendant's] testimony as to how the subpoenaed records came to be discarded or destroyed is relatively straightforward but ultimately not credible." The court specifically rejected the defendant's testimony that the subpoenaed records were in the basement and that those records were discarded due to the presence of mold. The court further found that "[a] great deal of testimony was offered that strongly suggested the existence of records related to the patients listed on the subpoena other than those that were allegedly stored in the basement of [the defendant's] office," and that the defendant "made little to no effort to locate or produce records responsive to the subpoena." The court reasoned that "several of the patients identified in the subpoena continued in the care of [the defendant's] office after the service of the subpoena, and records would have been kept of those visits. . . . [The defendant's] attempt to explain how patient records were kept and maintained for these returning patients after their files were supposedly sent to the basement was not at all credible, and there is a strong possibility that some or all of the patient records requested by the subpoena still exist and are in use by the dental office." (Footnote omitted.) On those bases, the court concluded that the defendant failed to prove "by clear and convincing evidence that he is unable to comply with the subpoena's request for any and all documents in his possession and control related to the patients in question." The court further concluded that the defendant failed to sustain "his burden of proving a complete inability to comply with the court's order."

In challenging the court's finding of wilfulness, the defendant contends that the court erred in finding that his noncompliance was wilful because his testimony to the contrary was uncontroverted by the plaintiff. The defendant sets forth all of the evidence that he pre-

sented in support of his argument that he was unable to comply with the subpoena—evidence that was expressly discredited by the trial court—and asks this court to draw an alternative conclusion from that evidence. It is not the role of this court to do so. "[T]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony . . . and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Internal quotation marks omitted.) *FirstLight Hydro Generating Co.* v. *Stewart*, 328 Conn. 668, 679–80, 182 A.3d 67 (2018). Thus, the court was not required to credit the defendant's testimony or the evidence that he presented, and, because he bore the burden of proving that his noncompliance was not wilful, the plaintiff was not required to present any evidence in opposition to the defendant's claim. Accordingly, the defendant's claim that the court erred in finding that his noncompliance was wilful is unavailing.

## II

The defendant next challenges the court's award of attorney's fees. "The authority of the trial court to award attorney's fees following a contempt proceeding is well settled. Once a contempt has been found . . . [§ 52-256b (a)] establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees. . . . The award of attorney's fees in contempt proceedings is within the discretion of the trial court." (Footnote omitted; internal quotation marks omitted.) *O'Toole* v. *Hernandez*, 163 Conn. App. 565, 577, 137 A.3d 52, cert. denied, 320 Conn. 934, 134 A.3d 623 (2016). Section 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

The defendant argues that the court abused its discretion in awarding attorney's fees in the absence of a finding of wilful noncompliance. Because the court did, in fact, find that the defendant's noncompliance was wilful, and we have affirmed that finding, the defendant's challenge to the award of attorney's fees fails.

## III

The defendant finally claims that the trial court violated his constitutional right to be free from unreasonable searches when it issued an order permitting the plaintiff to search the office of his dental practice without a finding of probable cause or a valid search warrant. Specifically, the defendant argues that the court's order violated the fourth amendment to the United States constitution because our rules of practice, specif-

ically Practice Book § 13-9, do "not authorize the court to order an indiscriminate search of private property to obtain evidence to substantiate a perjury charge."[3] He contends that the order "exceeded the physical inspection authorized by Practice Book § 13-9, and, [thus], violated the fourth amendment's prohibition against general warrants." The defendant's argument is misplaced in that the court did not make any reference whatsoever to our rules of practice, or, more specifically to Practice Book § 13-9, when it issued its order permitting the plaintiff to search the defendant's property for patient records that were the subject of a subpoena that the defendant refused to comply with.

The plaintiff commenced this action seeking enforcement of the subpoena pursuant to General Statutes § 19a-14, which is entitled, "Powers of department concerning regulated professions." Section 19a-14 (c) affords the department "all powers and duties normally vested with a board in administering regulatory jurisdiction over such professions . . . including, but not limited to, standards for entry and renewal; grounds for discipline; receiving and processing complaints; and disciplinary sanctions . . . ." Specifically, § 19a-14 provides in relevant part: "(a) . . . The department shall . . . (10) Conduct any necessary review, inspection or investigation regarding qualifications of applicants for licenses or certificates, possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the Commissioner of Public Health or the commissioner's authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the Superior Court may make such order as may be appropriate to aid in the enforcement of this section . . . ." Thus, the court's authority to enforce the subpoena power of the plaintiff is derived from § 19a-14.

Here, the defendant has not challenged the constitutionality of § 19a-14 (a) (10), the authority pursuant to which the plaintiff commenced this action to enforce the subpoena that it had served upon the defendant. Because the defendant has not challenged the court's authority to issue the order under § 19a-14 (a) (10), or the constitutionality of that statute, we cannot review his challenge to the constitutionality of the order.[4] See *U.S. Bank, N.A.* v. *Armijo*, 195 Conn. App. 843, 846, 228 A.3d 131 (2020).

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The Commissioner of Public Health acts on behalf of the Department of Public Health, and references in this opinion to the department include the commissioner.

[2] "[A] civil contempt order requiring the contemnor to incur a cost or take specific action . . . satisfies the second prong of [*State* v. *Curcio*, 191 Conn.

27, 31, 463 A.2d 566 (1983)] and, therefore, constitutes an appealable final judgment." *Khan* v. *Hillyer*, 306 Conn. 205, 217, 49 A.3d 996 (2012).

[3] Practice Book § 13-9 (a) provides in relevant part: "In any civil action, in any probate appeal, or in any administrative appeal where the judicial authority finds it reasonably probable that evidence outside the record will be required, any party may serve in accordance with Sections 10-12 through 10-17 upon any other party a request to afford the party submitting the request the opportunity to inspect, copy, photograph or otherwise reproduce designated documents or to inspect and copy, test or sample any tangible things in the possession, custody or control of the party upon whom the request is served or to permit entry upon designated land or other property for the purpose of inspection, measuring, surveying, photographing, testing or sampling the property or any designated object or operation thereon. . . ."

[4] To the extent the defendant maintains that the warrantless search of his office was unreasonable in that it "authorized a nearly unfettered search of [his] private property," that argument is belied by the plain language limiting the scope of the search and the context of the proceeding in which it was ordered. The defendant was afforded several opportunities over the course of several years to comply with the subpoena, but he failed to do so. The plaintiff commenced this action to enforce the subpoena that the defendant had successfully avoided since 2015. Since 2015, his reasons for noncompliance have been fluid, and, most recently, as noted herein, the defendant has claimed that the records sought by the plaintiff no longer exist because they were destroyed after they were contaminated by toxic mold caused by flooding in the basement of his practice, where he allegedly had been storing those and other active and inactive patient files. The court held evidentiary hearings, first on the plaintiff's motion for contempt, then on the defendant's motion to vacate. At both hearings, the defendant was afforded the opportunity to be heard. The hearing on the motion to vacate, which gave rise to the order now at issue, spanned three days, and the defendant testified and presented exhibits in defense of his noncompliance. After finding that the defendant's explanation for noncompliance was not credible, the court issued the order authorizing a search that was limited in scope to allow an inspection of the defendant's records and storage practices.